## MATTER OF LOCICERO

### In Section 246 Proceedings

#### A-5746800

*Decided by Board September 20, 1966*

Since dismissal of pertinent counts of indictment for income tax violation after commencement of criminal proceedings, on agreement of counsel, does not estop the Service from examining facts in rescission proceedings, to determine if respondent was a person of good moral character at the time of adjustment of his status under section 249 of the Immigration and Nationality Act, such adjustment of status is rescinded because respondent, who had fraudulently understated his income during 1958 and 1959 for the purpose of avoiding payment of a substantial sum in U.S. income taxes, was not a person of good moral character at the time he secured adjustment of status on November 17, 1960, and therefore, was not statutorily eligible for such relief. .

This case is before us on appeal from a decision of a special inquiry officer dated October 22, 1965, rescinding the adjustment of status previously granted to the respondent under section 249 of the Immigration and Nationality Act [8 U.S.C. 1259].

The respondent is a 62-year-old married male who is a native and citizen of Italy. The special inquiry officer's findings (decision, pp. 1, 5–6, 61, 65–68, 72) are to the effect that the respondent entered the United States about April 12, 1923 as a stowaway aboard the SS "St. Joseph Philadelphia"; the he was granted adjustment of status on November 17, 1960 under section 249 of the Immigration and Nationality Act; that he willfully failed to file a United States income tax return for 1957 although required to do so; that he filed false and fraudulent United States income tax returns for 1958 and 1959 claiming taxable income of $2,408.20 and $4,827.70 respectively; that his taxable income for the years 1957, 1958 and 1959 was actually $9,293.65, $10,864.16 and $16,104.03 respectively; that the respondent was attempting to evade and defeat the payment of income tax; that the respondent violated 26 U.S.C. 7201 on or about April 15, 1958, April 15, 1959 and April 15, 1960; and that these

805

violations precluded the respondent from possessing good moral character at the time adjustment of status was granted.

The sole issue is whether the special inquiry officer's action in rescinding the adjustment of status was correct. As stated in the last paragraph on page 5 of the "Notice" (Ex. 1) served on the respondent, it was asserted that he was not eligible for adjustment of status because he was not a person of good moral character. Although there was an allegation that the respondent failed to disclose his full arrest record in his application for adjustment of status, the principal basis for the assertion that the respondent was not a person of good moral character relates to the United States income tax delinquencies for the years 1957, 1958 and 1959.

We have carefully reviewed the entire record. The special inquiry officer has thoroughly discussed the evidence on which his findings were based, and we concur fully in his discussion and findings with the exception of the last two findings mentioned above and with the further exception that we will not make a definite determination as to whether there was a tax violation for the calendar year 1957. During the oral argument, the appellate trial attorney stated that it was unnecessary for the special inquiry officer to find that the respondent had violated 26 U.S.C. 7201, and we agree that this is correct. In other words, we concur in the special inquiry officer's various subordinate findings which resulted in his ultimate conclusion that the respondent had violated 26 U.S.C. 7201 but we can perceive no reason why the special inquiry officer or this Board should make a determination as to whether or not the respondent was guilty of violating a particular penal provision. The other finding of the special inquiry officer in which we do not concur is that the violations *precluded* the respondent from possessing good moral character. Instead, we hold that, by reason of the respondent's attempt to evade and his evasion of United States income taxes for the years 1958 and 1959, he was not a person of good moral character at the time his application under section 249 was granted.

We understand that counsel relies, not only on his contentions during the oral argument, but also on those stated in the brief submitted by former counsel. We have considered fully all of these contentions. Insofar as concerns contentions based on factual allegation 17 of Exhibit 1, we find it unnecessary to discuss these since the special inquiry officer held that the allegation was not sustained and we concur in that conclusion. With respect to a contention that the Service did not establish that adjustment of status under section 249 was necessary, it was the respondent himself who filed the application under that statutory provision, and Exhibit 8 shows the nonexistence

of a record of the respondent's lawful admission in April 1922 or on April 12, 1923 on the SS "St. Joseph Philadelphia". During the oral argument (p. 8), counsel stated that the respondent has been in the United States for 42 years and that the Government is now seeking to deport him. Actually, the matter before us is solely whether the adjustment of status granted to the respondent should be rescinded. If a deportation proceeding should be instituted in the future, the respondent will have the opportunity of offering his defense to that action.

In the brief, it was stated that there was a denial of due process by reason of the introduction into evidence of the record of the respondent's conviction for violation of 26 U.S.C. 7201. This relates to the fourth count of the indictment (Ex. 5) which charged that on or about April 15, 1961 the respondent attempted to evade and defeat a large part of the income tax due for the calendar year of 1960 by stating his taxable income as $8,219.00 and tax as $1,736.94 whereas his taxable income was $32,782.87 and the tax due was $10,791.43. The respondent pleaded guilty to this charge on January 13, 1965. The contention is based on the fact that the offense was committed on or about April 15, 1961 which was subsequent to the date on which adjustment of status was granted—November 17, 1960. We believe it is clear from the special inquiry officer's decision that he did not consider this conviction as being evidence that the respondent was not a person of good moral character at the time adjustment of status was granted. Accordingly, this contention of counsel is dismissed.

Following the respondent's plea of guilty on January 13, 1965, sentence was imposed on February 17, 1965 and thereupon the first three counts of the indictment were dismissed on motion of the Assistant United States Attorney. Counsel states that the Government relied on the offenses mentioned in the first three counts in this rescission proceeding; that the dismissal of these counts constituted an acquittal of these charges; and that the Government is barred from using these three offenses under the doctrine of res judicata. We reject this contention on the authority of *Helvering* v. *Mitchell*, 303 U.S. 391, 397 (1938), in which there was an acquittal in a criminal prosecution. The court said that the doctrine of estoppel by judgment did not preclude the Government from recovering the 50 percent penalty for fraudulent intent to evade payment of income tax, and that the acquittal was merely an adjudication that the proof was not sufficient to overcome all reasonable doubt of the guilt of the accused.

Counsel seeks to avoid the clear ruling of *Helvering* v. *Mitchell, supra,* by contending that the burden of proof here is the same as in a criminal case, citing a decision of the Second Circuit on September 22, 1965 in *Sherman* v. *Immigration and Naturalization Service,* 350 F.2d 894. This decision was reversed on January 17, 1966 upon rehearing by the Court en banc, and the case is now before the Supreme Court on certiorari. In any event, that case involved a deportation proceeding against a long-time resident of the United States and, as we have already pointed out, the respondent's case is not a deportation proceeding. Section 246(a) of the Immigration and Nationality Act [8 U.S.C. 1256(a)] directs the Attorney General to rescind the action granting adjustment of status if "it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status * * *", and we have held that this means that the Service must establish its contention in the rescission proceeding by a preponderance of evidence which is reasonable, substantial and probative. *Matter of Barreiros,* 10 I. & N. Dec. 536, 538 (1964). For the reasons indicated above, we hold that the dismissal of the first three counts of the indictment does not preclude the special inquiry officer and this Board from determining whether the similar factual allegations numbered 11, 12 and 13 of the "Notice" (Ex. 1) are true and, if so( whether this shows a lack of good moral character on the part of the respondent.

The respondent refused to testify in this proceeding, and his wife also did not testify. William C. McCafferty, who has been a Special Agent of the Internal Revenue Service for ten years and investigated the respondent's tax liability, appeared as a Government witness at the hearing. He had conferences with the respondent on August 20 and 24, 1962, March 18, 1963 and December 23, 1963. Immediately after each meeting with the respondent, Mr. McCafferty prepared a report concerning the matter and these are a part of the record as Exhibits 54, 55, 56 and 58. The respondent's wife was present at each conference except the one on August 24, 1962. The respondent stated that he had no financial records. He had acknowledged to Mr. McCafferty (Tr. p. 48) that he had not filed any income tax returns between 1945 and 1957, claiming that he had not received sufficient income during those years to require the filing of returns. The 11th factual allegation of the "Notice" relates to the failure to file a return for the calendar year 1957. The income tax returns for the calendar years 1958 and 1959 (Exs. 39 and 46) were joint returns filed by the respondent and his wife.

Two contentions, made during the oral argument (pp. 4–5, 16–17), involve Nina Giarratano. Counsel referred to her as being the

respondent's niece but actually she was his stepdaughter, being his first wife's daughter by her first marriage. In 1952 Nina had married Frank Giarratano who died on December 6, 1955. In October 1956, she married her deceased husband's brother, Joseph Giarratano. Nina Giarratano died on July 16, 1957.

One of these contentions relates to the source of the funds which were used in the purchase of a $28,000 two-family house in 1957. The legal title was placed in the name of the respondent's wife but he referred to himself as the owner while being questioned by Mr. McCafferty on August 20, 1962 (Ex. 54) in the presence of his wife. The respondent stated that a $15,000 mortgage had been obtained and that Nina Giarratano had turned over about $14,000 in cash to her mother, the respondent's wife. Mrs. Locicero stated that her daughter obtained the funds as the result of the death of her husband, Frank. Frank Giarratano was last employed as a truck driver for the Post Office. Exhibit 48 shows that his wife, Nina, received two checks for insurance on his life in December 1955—from the Prudential Insurance Company of America in the sum of $1,015.80 and from Federal Employees' Group Life Insurance in the sum of $4,000. The latter was deposited on December 28, 1955 in Nina Giarratano's account at Bay Ridge Savings Bank and, after two other deposits and ten withdrawals, the entire amount had been withdrawn by June 26, 1956. Mr. McCafferty testified concerning Nina Giarratano's earnings during 1949, 1950 and 1951 and that there was no record of any earnings thereafter. The contention that Nina Giarratano had given approximately $14,000 to the respondent's wife was discussed by the special inquiry officer in his decision (pp. 18–22) and he concluded that this claim was not in accord with fact. It is our finding that the respondent and his wife did not receive $14,000 nor any substantial amount from Nina Giarratano.

Counsel's second contention concerning Nina Giarratano is that Mr. McCafferty had included, as chargeable to the respondent, the sum of $1,300 [actually $1,334] paid for the funeral of Nina's first husband, Frank Giarratano. It appears from Mr. McCafferty's testimony (Tr. pp. 402–404; 423–425) that Joseph Giarratano had stated that the respondent and his wife had paid the funeral bills of Frank Giarratano and Nina Giarratano. During the hearing, the funeral director testified that there was an Italian custom that people attending the wake or funeral would leave contributions to defray expenses. While it is true that Mr. McCafferty had used this amount of $1,334 in his computation for the year 1955, counsel is in error in stating (oral argument, pp. 16–17) that the special inquiry officer also considered this amount as an expenditure chargeable to

the respondent inasmuch as the special inquiry officer (decision, pp. 28-29) specifically found that this item of $1,334 could not be allowed as a charge against the respondent and his wife. He also found that the contributions at the funeral did not exceed the amount of the funeral bill. While counsel did not specifically refer to the funeral bill for Nina Giarratano in the amount of $1,790, the special inquiry officer disallowed this amount (decision, pp. 33-34).

Counsel also contended (oral argument, pp. 3-4) that the respondent's wife would not have signed the contract to purchase the $28,000 house on January 8, 1957 unless she had the required cash on hand; that she must have had these funds by the end of 1956; and that the Government had made the claim that the $14,000 paid in cash must have been income accrued in 1957. Actually, there were two cash payments which were made on or about January 8, 1957 and April 9, 1957 totaling $13,000 rather than $14,000, and there is nothing in the record to indicate that the Government considered this amount as income earned in 1957. On the contrary, the Government included, among other assets which the respondent and his wife had on hand at the end of 1956, $5,000 in cash and $4,509 on deposit in Bay Ridge Savings Bank Account B 176082 (Exs. 12A and 16A). In addition, Appendix "7" attached to the special inquiry officer's decision shows that during 1957 the net worth of the respondent and his wife had increased merely $4,752.55 and that their corrected taxable income, as found by the special inquiry officer, was only $9,293.65 (Lines 9 and 41.)

Counsel has also made certain contentions based on the fact that, because no income tax return was filed for the year 1957, it cannot be assumed that rents received and expenses for the maintenance of the two-family house are chargeable to the respondent inasmuch as the legal title was in his wife's name. This contention is not urged concerning the years 1958 and 1959 when the respondent and his wife filed joint income tax returns and were, therefore, required to report all of their income. It is our conclusion that the special inquiry officer was correct in holding that the respondent fraudulently understated his income during 1958 and 1959 for the purpose of avoiding the payment of a substantial sum in taxes. We hold, therefore, that he was not a person of good moral character at the time he secured adjustment of his immigration status on November 17, 1960. Under the circumstances, it is unnecessary to reach any determination concerning the failure to file an income tax return for the year 1957 as specified in the 11th factual allegation of the "Notice". We have carefully considered the remaining contentions of counsel but they are without merit and do not require specific discussion. In view of the forego-

ing, we hold that the respondent was not statutorily eligible for adjustment of his status on November 17, 1960 and that the order of the special inquiry officer rescinding that action was correct. Accordingly, the appeal will be dismissed.

ORDER: It is ordered that the appeal be and the same is hereby dismissed.