07-3736-ag
Sumbundu v. Holder

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued:    March 12, 2009                    Decided: April 7, 2010)

Docket No. 07-3736-ag

---

EBRIMA SUMBUNDU and FATOUMATA YAFFA,

Petitioners,

– v. –

ERIC. H. HOLDER, JR.,[1] ATTORNEY GENERAL,
UNITED STATES DEPARTMENT OF JUSTICE,

Respondent.

---

Before: CALABRESI and LIVINGSTON, *Circuit Judges*, and RESTANI, *Judge*.[2]

Petition for review of the Board of Immigration Appeals' ("BIA") decision affirming an

Immigration Judge's denial of cancellation of removal on the grounds that Petitioners lacked

moral character under the "catchall" provision of 8 U.S.C. § 1101(f).  We hold that, when

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder, Jr., is automatically substituted for former Attorney General Alberto Gonzales as a respondent in this case.

[2] Judge Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

petitioners raise "constitutional claims or questions of law," 8 U.S.C. § 1252(a)(2)(D); *see Mendez v. Holder*, 566 F.3d 316, 317, 322 (2d Cir. 2009), we have jurisdiction to review the agency's moral character determinations made pursuant to the catchall provision. A review of the record in this case demonstrates that, while Petitioners raise such questions of law, thereby giving us jurisdiction, Petitioners' arguments nonetheless lack merit. Accordingly, the petition for review is DENIED.

EDWARD J. CUCCIA, Ferro & Cuccia, New York, N.Y., *for Petitioners.*

P. MICHAEL TRUMAN, Trial Attorney, *for* Michelle Gorden Latour, Assistant Director, Office of Immigration Litigation, *and* Jeffrey S. Bucholtz, Acting Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., *for Respondent.*

CALABRESI, *Circuit Judge*:

Petitioners Ebrima Sumbundu and Fatoumata Yaffa, husband and wife, seek review of an August 17, 2007 decision of the Board of Immigration Appeals ("BIA") that affirmed the Immigration Judge's ("IJ") November 30, 2005 denial of their applications for cancellation of removal. *In re Sumbundu*, No. A73 648 267 (B.I.A. Dec. Aug. 17, 2007), *aff'g* Nos. A73 648

2

267 *and* No. A98 279 414 (Immig. Ct. N.Y. City Nov. 30, 2005). The IJ rejected Petitioners' applications in part because he found that Sumbundu and Yaffa failed to demonstrate the good moral character required for obtaining cancellation of removal pursuant to 8 U.S.C. § 1229b(b)(1)(B). In reaching this conclusion, the IJ did not rely on any of the listed 8 U.S.C. § 1101(f) categories that preclude a finding of good moral character; instead, as the BIA explained, his ruling relied on the "catchall" provision of § 1101(f), which provides that although a petitioner's conduct may fall outside one of these enumerated categories, that fact does not bar "a finding that for other reasons such person is or was not of good moral character."

Petitioners contend, *inter alia*, that the IJ and BIA erred as a matter of law by applying the wrong standards in evaluating their moral character. In response, the Respondent argues that this Court has no jurisdiction to review the agency's decisions made pursuant to the catchall language of § 1101(f). This Court has not yet decided to what extent we have jurisdiction to examine such decisions, and this case requires us to determine for the first time whether we can review petitions where a question of law is raised challenging the BIA's moral character determination under the catchall provision of § 1101(f). We hold that—at least in such limited circumstances—we do have jurisdiction, but find that the Petitioners' claims fail on their merits.

**Background**

Petitioners Sumbundu and Yaffa are natives and citizens of the Gambia. They came to the United States in May and October 1992, respectively, on tourist visas which have long since expired. They have five children who are United States citizens and are now ages seventeen, fifteen, thirteen, nine, and five. The fifteen-year-old is their only daughter.

On September 22, 1994, Sumbundu filed an application for asylum and withholding of

removal, claiming that he was persecuted in the Gambia because of his religion. The Department of Homeland Security began removal proceedings against him on February 2, 2004 by issuing a Notice to Appear ("NTA"), which charged him with removability under 8 U.S.C. § 1227(a)(1)(B), as an alien who remained in the United States without authorization. At his hearing on March 3, 2004, Sumbundu conceded removability as charged, but stated that he was also applying for cancellation of removal and that he wanted his case to be joined with his wife's. Yaffa filed an asylum application on March 9, 2004, claiming that she underwent female genital mutilation ("FGM") in the Gambia as a child, and that she feared that her daughter would suffer the same treatment if the family returned there. After the Department of Homeland Security started removal proceedings against Yaffa, she also conceded removability and, like her husband, filed an application for cancellation of removal.

The cases were considered together before IJ Thomas J. Mulligan who, after a merits hearing on November 30, 2005, ordered both Petitioners removed. The IJ noted that Petitioners initially applied for asylum, withholding of removal, and relief under Article 3 of the Convention Against Torture, and that these applications were subsequently withdrawn. As a result, the only matters before the IJ were Petitioners' applications for cancellation of removal.

8 U.S.C. § 1229b(b)(1) provides that:

The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien--

(A) has been physically present in the United States for a continuous period of not

4

less than 10 years immediately preceding the date of such application;

(B) has been a person of good moral character during such period;

(C) has not been convicted for an offense under [8 U.S.C. § 1182(a)(2),

1227(a)(2), or 1227(a)(3)] . . . ; and

(D) establishes that removal would result in exceptional and extremely unusual

hardship to the alien's spouse, parent, or child, who is a citizen of the United

States or an alien lawfully admitted for permanent residence.

The IJ and BIA denied Petitioner's application for cancellation of removal based on two of these elements: (1) Petitioners' failure to establish that their citizen daughter would suffer exceptional and extremely unusual hardship, 8 U.S.C. § 1229b(b)(1)(D), and (2) Petitioners' failure to demonstrate that they were persons of good moral character during the ten years immediately preceding their application, *id.* § 1229b(b)(1)(B). Because we affirm the BIA's decision based on its moral character finding, and because that finding alone is sufficient to deny Petitioners cancellation of removal, we discuss only that element.

The IJ had "a number of concerns about [Petitioners'] good moral character." J.A. 141. Specifically, the IJ noted that Petitioners had misreported their income on their tax returns repeatedly between 1996 and 2004. While misreporting their income, Petitioners were living in taxpayer subsidized housing in New York City, leading the IJ to conclude that they "were taking advantage of tax payer funded housing and not adequately reporting to the income tax authorities and to the New York City Housing Authority . . . the extent of their work activity and their income." J.A. 142. Moreover, the record revealed that Sumbundu had first testified that he did

5

not work in 2004, and later admitted that he did work for his "own business" but did not file tax returns for that year. *Id.*

After considering this evidence and in view of Petitioners' "need to feed, clothe and shelter this many children in the city of New York," the IJ found that there had been "a grossly inaccurate and probably fraudulent reporting of tax income since probably 1992," *id.*, while Petitioners were living in taxpayer subsidized housing. Accordingly, the IJ concluded that Sumbundu and Yaffa failed to establish that they acted as people of good moral character during the requisite time period. Petitioners appealed the ruling to the BIA.

On April 3, 2006, while Petitioners' appeal was pending, Sumbundu and Yaffa moved the BIA to remand the matter to the IJ so that they could introduce evidence that they claimed was not available during their earlier removal proceedings. Petitioners allegedly had corrected the inaccuracies that had been made in their tax returns for 2001 through 2004, and wanted to submit those amended returns to the agency. The amended returns reflected additional income that had previously been unreported and, according to Petitioners, additional dependents were properly added to the 2002 tax return, thereby affording them a deduction that they could have previously taken but had not.

The BIA affirmed the IJ's decision on both the hardship and moral character rationales and refused to remand the case to the IJ to consider the amended tax returns. As to the moral character decision, Petitioners asserted that because they had not sought to avoid paying a "substantial sum" in taxes, the IJ's finding was erroneous in view of the BIA's holding in *In re Locicero*, 11 I & N Dec. 805 (BIA 1966). The BIA disagreed, stating that nothing in *In re Locicero* precluded a finding of poor moral character based on ongoing misrepresentation in

6

multiple years' income tax returns, irrespective of whether the misrepresentations involved a "substantial sum." Instead, the BIA noted that an IJ has latitude in evaluating a petitioner's moral character because "where specific conduct does not preclude a finding of good moral character under one of the enumerated categories of . . . 8 U.S.C. § 1101(f), that same conduct may nevertheless be considered in making a determination on good moral character in accordance with the 'catchall' provision of [§ 1101(f)]." J.A. 2-3.

With respect to the amended tax returns, the BIA found that the revised forms for years 2000-2004 and the "purported payment of taxes due for such years, *subsequent to the Immigration Judge's issuance of a removal order*," did not show that the IJ had erred in finding that the earlier longstanding tax misrepresentations demonstrated a lack of good moral character during the statutorily mandated period. J.A. 3. The amended forms instead served to confirm that Petitioners had initially disclosed only a portion of their actual income in each of the cited tax years, in some cases originally disclosing less than half of their actual income to the Internal Revenue Service. The BIA concluded that the Petitioners "failed to provide any explanation for the original misrepresentations that would undermine the Immigration Judge's finding" that they lacked good moral character, nor had they enumerated any "countervailing equities" that could overcome the IJ's decision.[3] *Id.* Petitioners filed a timely petition for review.

## Discussion

Petitioners contend that the BIA erred as a matter of law in finding that they failed to demonstrate good moral character. Specifically, they argue that the BIA applied the wrong legal

---

[3] Additionally, the BIA explained in a footnote that it would be improper to remand to the IJ based on the amended tax forms because Petitioners had not established that such amended returns were unavailable and undiscoverable to them prior to their removal hearing.

7

standard in determining that they lacked good moral character because it denied their application without finding (1) that they *intended* to file inaccurate tax returns, or (2) that they failed to pay a *substantial sum* of taxes. In response, the Government argues that this Court has no jurisdiction to review the agency's decisions made pursuant to the catchall language of § 1101(f).[4] We write to clarify, and to decide in part, the question—open in this Circuit—of whether or to what extent we have jurisdiction to review the BIA's moral character decisions under the catchall clause.

**I.      Jurisdiction**

The statutory definition of "good moral character" enumerates a series of offenses that will automatically preclude a finding of good moral character. These *per se* categories are followed by a catchall provision. *See* 8 U.S.C. § 1101(f):

> (f) For the purposes of this chapter—
>
> No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was--
>
>> (1) a habitual drunkard;
>>
>> (2) [Repealed]
>>
>> (3) a member of one or more of the classes of persons, whether inadmissible or not, described in paragraphs (2)(D), (6)(E), and (10)(A) of section 1182(a) of this

---

[4] The Government is not altogether clear as to whether it is asserting (a) that we lack jurisdiction even if petitioners have raised a plausible issue of law, or (b) that had petitioners raised such an issue we would have jurisdiction, but that, in the case before us, petitioners failed to present such a plausible question of law.

title; or subparagraphs (A) and (B) of section 1182(a)(2) of this title and subparagraph (C) thereof . . . (except as such paragraph relates to a single offense of simple possession of 30 grams or less of marihuana), if the offense described therein, for which such person was convicted or of which he admits the commission, was committed during such period;

(4) one whose income is derived principally from illegal gambling activities;

(5) one who has been convicted of two or more gambling offenses committed during such period;

(6) one who has given false testimony for the purpose of obtaining any benefits under this chapter;

(7) one who during such period has been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more, regardless of whether the offense, or offenses, for which he has been confined were committed within or without such period;

(8) one who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43) of this section); or

(9) one who at any time has engaged in conduct described in section 1182(a)(3)(E) of this title (relating to assistance in Nazi persecution, participation in genocide, or commission of acts of torture or extrajudicial killings) or 1182(a)(2)(G) . . . (relating to severe violations of religious freedom).

*The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character. . . . .*

(emphasis added). *See also In re Urpi-Sancho*, 13 I & N Dec. 641, 643 (BIA 1970) (holding that where specific conduct does not preclude a finding of good moral character under one of the enumerated categories of § 1101(f), that same conduct may nevertheless be considered in making a determination on good moral character in accordance with the catchall provision).

In *Sepulveda v. Gonzales*, 407 F.3d 59 (2d Cir. 2005), we found that we had jurisdiction to review an IJ's determination that a petitioner had been confined for an aggregate period of more than one hundred and eighty days, and that he, therefore, lacked moral character under subsection (f)(7) of 8 U.S.C. § 1101. *Id.* at 62-63. In reaching this conclusion, we held that "8 U.S.C. § 1252(a)(2)(B) does not strip courts of jurisdiction to review non-discretionary decisions regarding an alien's eligibility for the relief specified in 8 U.S.C. § 1252(a)(2)(B)(i)." *Id.* Being incarcerated for an aggregate period of more than one hundred and eighty days is a *per se* category, barring an IJ from granting cancellation of removal. 8 U.S.C. § 1101(f)(7). Because the IJ's decision to deny cancellation of removal in Sepulveda was based on a ground whose presence did not entail discretionary findings, we concluded that § 1252 did not bar review.

It is undisputed that Petitioners' inaccurate tax filings do not fall within any of the *per se* categories of § 1101(f). This case, then, presents the question of how to treat an IJ's finding that a petitioner lacks good moral character based on § 1101(f)'s catchall provision. We have three potential options. First, it could be considered a non-discretionary decision (and under *Sepulveda* we would retain jurisdiction to review the determination broadly, e.g., for substantial evidence). Second, it could be a discretionary decision, but of the kind as to which we have been given jurisdiction to review plausible questions of law and constitutional claims (in the way we

10

now review the agency's determination of whether a petitioner has demonstrated "exceptional and extremely unusual hardship"). *See, e.g.*, *Mendez v. Holder*, 566 F.3d 316, 322 (2d Cir. 2009). Third, an agency's decision under the catchall provision might be considered totally discretionary, i.e., one that is so fully committed to the agency's choice that we have no jurisdiction to review it at all (such as BIA rulings on whether to reopen cases *sua sponte*). *See Ali v. Gonzales*, 448 F.3d 515, 518 (2d Cir. 2006). For clarity, we will refer to the *first* as "non-discretionary decisions," to the *second* as "REAL ID Act, partly reviewable, discretionary decisions," and to the *third* as "pure agency judgment decisions."

Our jurisdiction to review the agency's discretionary determinations regarding cancellation of removal is limited by statute. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996) ("IIRIRA"), codified in relevant part at INA Section 242(a)(2)(B)(i) and (ii), amended the Immigration and Nationality Act ("INA") to preclude judicial review of "any judgment regarding the granting of relief" under 8 U.S.C. § 1229b, among other sections, and of "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(i) and (ii). But, the scope of the IIRIRA's jurisdiction-stripping provision was subsequently limited by the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 ("REAL ID Act"), codified in relevant part at INA Section 242(a)(D), which provides that "[n]othing in subparagraph (B) or (C) [of § 1252] which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals." 8 U.S.C. §

11

1252(a)(2)(D).

It is in this context that we consider the reviewability of agency determinations with respect to moral character. As noted above, where decisions with respect to moral character are deemed to be "non-discretionary," they are fully reviewable. *See Sepulveda*, 407 F.3d at 62-63. The Eighth Circuit has held that decisions under the catchall provision of § 1101(f) fall within this category. *Ikenokwalu-White v. INS*, 316 F.3d 798, 802-04 (8th Cir. 2003) (moral character determinations, even when not made pursuant to one of the enumerated categories, are non-discretionary and reviewable for substantial evidence). Other circuits have disagreed as to catchall determinations. See *Bernal-Vallejo v. INS*, 195 F.3d 56, 62-63 (1st Cir. 1999) (explaining that decisions under the catchall provision are discretionary); *Kalaw v. INS*, 133 F.3d 1147, 1151 (9th Cir. 1997) (same). But it is not altogether clear whether these circuits would treat catchall determinations as "REAL ID Act, partly reviewable, discretionary decisions," or as "pure agency judgment" ones.[5]

Until today, we have not had reason to decide whether catchall moral character decisions are non-discretionary and fully reviewable, or whether our jurisdiction to review them is either more limited or non-existent. Because we conclude that petitioners in the case before us *have* raised plausible questions of law, we do not need to consider whether we would have jurisdiction had they not done so. Instead, we expressly leave that question (and the position we would take

---

[5] The First and Ninth Circuit decisions pre-dated the REAL ID Act, and, though they have seemingly been applied after that Act as well, they do not appear to have considered the Act or the question of what sort of discretion is entailed under the catchall provision in view of that Act. The Ninth Circuit, even *before* the REAL ID Act was passed, treated even discretionary decisions as subject to review for constitutional violations. *See, e.g.*, *Salvador-Calleros v. Ashcroft*, 389 F.3d 959, 962 (9th Cir. 2004).

12

on the above-mentioned circuit split) open, and assume *arguendo* that whatever jurisdiction we have is limited to errors of law and to plausible constitutional claims.

The question that we must decide today, therefore, is simply whether decisions under the catchall provision are "pure agency judgment" ones and totally unreviewable or are "REAL ID Act, partly reviewable" ones. Guidance in making this decision is given to us by our handling of findings with respect to "exceptional and extremely unusual hardship," another element of cancellation of removal under 18 U.S.C. § 1229b(b)(1).

As to whether "exceptional and extremely unusual hardship" is present, we have held that such determinations are beyond our jurisdiction to review except in those cases where a BIA decision is made "without rational justification or based on a legally erroneous standard" or rests on fact-finding "which is flawed by an error of law," *Barco-Sandoval v. Gonzales*, 516 F.3d 35, 39-40 (2d Cir. 2008) (internal quotation marks omitted); *see also Mendez*, 566 F.3d at 322. This holding, in turn, rested on our decision in *Xiao Ji Chen v. Department of Justice*, 471 F.3d 315 (2d Cir. 2006) ("*Xiao Ji Chen II*"), where we acknowledged that the REAL ID Act restored our jurisdiction to review "constitutional claims or questions of law," *id.* at 324 (quoting 8 U.S.C. § 1252(a)(2)(D)), but that we remain deprived of jurisdiction to review discretionary decisions "when the petition for review essentially disputed the correctness of an IJ's fact-finding or the wisdom of his exercise of discretion," *id.* at 329; *see also Barco-Sandoval*, 516 F.3d at 39. Accordingly, assuming as we do for purposes of this opinion that moral character determinations made under the catchall provision are discretionary, it would seem to follow that, as with hardship determinations, our review should be limited to those relatively rare instances where the petitioner raised a "constitutional claim or question of law."

13

The Government suggests, however, that there is not a reviewable "algorithm" for determining when an applicant lacks good moral character for any of the "other reasons" upon which such a finding pursuant to the catchall provision may be based. And, because there is allegedly no meaningful standard against which to judge the agency's exercise of its decision-making authority, the agency's discretionary determination with regard to the catchall language must be beyond our review powers. In this respect an analogy is sought to be drawn between the present question and that in *Ali v. Gonzales*, where we held that the agency's decision not to exercise its authority to reopen deportation proceedings *sua sponte* constituted an unreviewable exercise of its discretion, in part because "no meaningful standard exists against which to judge an IJ's decision to exercise *sua sponte* authority" to do so. 448 F.3d at 518 (quoting *Enriquez-Alvarado v. Aschroft*, 371 F.3d 246, 249-50 (5th Cir. 2004)).

But, as the Government also notes, there is not an "algorithm" for the agency's hardship determinations, yet we retain jurisdiction to review that element for constitutional claims and questions of law. *See Zhang v. Gonzales*, 457 F.3d 172, 178 n.3 (2d Cir. 2006) (Cabranes, J. concurring) (noting that hardship determinations "are by their very nature fact-intensive and entail a discretionary weighing of multiple, non-exclusive factors"). And, the Government makes no attempt to distinguish the agency's decisions under the catchall provision of 8 U.S.C. § 1101(f) from its decisions as to whether there is exceptional and extremely unusual hardship. In both instances, it suggests, we must look to the agency's precedential decisions for guidance on the meaning of hardship or good moral character.

Likewise the proposed analogy between decisions pursuant to the catchall language and agency decisions on whether to exercise *sua sponte* authority to reopen under 8 C.F.R. §

14

1003.2(a), is not persuasive. "[T]he regulation providing for reopening or reconsidering a case *sua sponte* offers no standard governing the agency's exercise of discretion." *Calle-Vujiles v. Ashcroft*, 320 F.3d 472, 475 (3d Cir. 2003). There are no markers provided in the statutory language for when *sua sponte* reopening would be appropriate. Hence, "the decision of the BIA whether to invoke its sua sponte authority is committed to its unfettered discretion [and is] not subject to judicial review." *Luis v. I.N.S.*, 196 F.3d 36, 40 (1st Cir. 1999). In contrast, with moral character decisions under the catchall clause, there may not be an algorithm, but there remains a standard—good moral character—which the agency must find before granting cancellation of removal. Significantly, the same is true as to whether there is "exceptional or extremely unusual hardship." As a result, our decisions under that clause would seem at least to provide us with a closer analogy for determining our minimum jurisdiction to review in moral character cases.

Moreover, it would seem incongruent to treat moral character determinations based on a petitioner's aggregate period of confinement under 8 U.S.C. § 1101(f)(7) as non-discretionary and fully reviewable, but to treat judgments made pursuant to the catch-all provision as completely beyond our jurisdiction to review. *Cf. Ikenokwalu-White*, 316 F.3d at 803 ("[I]t would be anomalous to allow judicial review of a moral character determination to someone who was allegedly a habitual drunkard, with the attendant factual disputes that such a finding might involve, but to deny judicial review to someone . . . whose alleged misconduct was not severe enough to bring her within any of Section 1101(f)'s per se categories.") A "pure agency judgment" rule for the catchall section of § 1101 would prohibit us from reviewing the decision to deny an application based on the petitioner's reading unpopular books, while allowing us to

review a moral character determination of an applicant who has been incarcerated as a result of his conviction for various crimes.

Accordingly, we conclude, and hold, that we have jurisdiction to review the agency's moral character determinations made pursuant to the catchall provision of 8 U.S.C. § 1101(f) at least when the petitioners, as here, raise "constitutional claims or questions of law," 8 U.S.C. § 1252(a)(2)(d); *see Mendez v. Holder*, 566 F.3d at 322.[6]

**II.      Merits**

Petitioners assert that the IJ and BIA applied the wrong legal standard in evaluating their moral character in two ways: (1) by failing to find that their misconduct was intentional, and (2) by failing to find that they misrepresented a "substantial sum" on their tax returns. First, Petitioners assert that their behavior in question—here the filing of inaccurate tax returns—must be accompanied by "knowing or intentional conduct." *See In re Perez-Contreras*, 20 I & N Dec. 615, 618 (BIA 1992). And, because Petitioners had little or no formal schooling, and there was no direct evidence that they knew of or intended to misrepresent their income, they argue that the finding that they lacked good moral character is legally insufficient. Second, they claim, citing *Locicero*, that no "failure to show good moral character" determination may legally be made with respect to tax representations unless they involve a "substantial sum." Both of these claims raise non-frivolous questions of law, and hence support our finding that we have jurisdiction. But in the end, both contentions are unavailing.

---

[6] Once again we note that we expressly leave open the question of whether moral character determinations under the catchall provision are essentially non-discretionary and hence subject to substantial evidence review, and we take no position on the seeming circuit split on that issue.

As to the first, the alleged requirement of intent is derived by Petitioners from the question of whether a criminal alien is removable for having been convicted for a crime involving moral turpitude. *Perez-Contreras*, 20 I & N Dec. at 618. We do not doubt that intent to commit misconduct is relevant to an IJ's decision that a petitioner lacks good moral character. The degree to which it is a requirement need not, however, be decided today. Here, the IJ found a decade-long pattern of gross under-reporting that was "probably fraudulent," and emphasized that, at the same time that they were under-reporting their income, Petitioners appeared to take improper advantage of taxpayer subsidized housing. Income level is clearly a requirement for subsidized housing and petitioners did nothing to show that the large percentage understatements of income were immaterial. Under the circumstances, whatever intent requirement may apply could be found to be present. And the BIA did not apply the wrong legal standard in this regard.[7]

Similarly, Petitioners' contention that the IJ's moral character determination was legally flawed because the IJ did not find that they misrepresented a "substantial sum" of taxes fails. In making this claim they rely on *In re Locicero*, 11 I & N Dec. 805 (BIA 1966). In that case, the BIA found that the respondent "fraudulently understated his income [for two years] for the purpose of avoiding the payment of a substantial sum in taxes." *Id.* at 810. The agency consequently concluded that he was not a person of good moral character and his adjustment of

---

[7] Moreover, we reject Petitioners' argument that the BIA was required to remand the case to the IJ to consider their amended tax returns. Petitioners argue that upon discovery that their taxes were inaccurately filed, they promptly made the necessary corrections. The fact that Petitioners amended their tax returns to reflect more accurately their income after being caught by the IJ does not negate the IJ's finding that their original, longstanding misrepresentations to the IRS indicated a lack of good moral character.

17

status could be rescinded. *Id.* at 810-11. But, though the BIA did find that the respondent in *Locicero* misstated a "substantial sum," nothing in the decision suggests that this was a *requirement* for moral character determinations related to inaccurate tax returns. In the instant case, Petitioners may not have misrepresented a "substantial sum"; still, the IJ found that their misrepresentations had persisted over many years and that they had taken advantage of taxpayer funded housing since 1992. We conclude that misrepresenting a "substantial sum" may certainly be a factor in the IJ's moral character determination. We, nevertheless, reject Petitioners' suggestion that the agency's discretion under the catchall provision is so narrow, as to entail any such requirement.

## Conclusion

Although we hold that we have jurisdiction to review Petitioners' claims that the IJ and BIA made legal errors in finding that, based on the catchall provision of 8 U.S.C. § 1101(f), they failed to meet the moral character requirement for cancellation of removal, 8 U.S.C. § 1229b(b)(1)(B), we conclude that Petitioners' arguments lack merit. Accordingly, the petition for review is DENIED.[8]

---

[8] Before us, Petitioners assert for the first time that the IJ and BIA should consider Petitioners' previously withdrawn asylum applications in light of our recent holding in *Bah v. Mukasey*, 529 F.3d 99 (2d Cir. 2008), and the BIA' s precedential decision in *In re S-A-K and H-A-H*, 24 I. & N. Dec. 464 (BIA 2008). As the agency has not yet had an opportunity to determine whether the asylum applications should be reconsidered, we decline to review this argument at this time. Petitioners also argue, based on a notation in the IJ's decision that he went "off the record" and then "on the record," that remand is required to ensure that the decision was correctly transcribed. This argument is frivolous and does not support any grant of relief.