[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-13180
_____

D. C. Docket No. A029-347-579

ELIAS JIMENEZ-GALICIA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of
the Board of Immigration Appeals

_____

(August 13, 2012)

Before BARKETT and EDMONDSON, Circuit Judges, and FULLER,* District
Judge.


EDMONDSON, Circuit Judge:

_____

*Honorable Mark E. Fuller, United States District Judge for the Middle District of
Alabama, sitting by designation.

Petitioner Elias Jimenez-Galicia, a native and citizen of El Salvador, seeks judicial review of a final order of removal issued by the Board of Immigration Appeals ("BIA"). The BIA's order affirmed an immigration judge's ("IJ") order of removal and denial of Petitioner's request for cancellation of removal. The denial was based on a determination that Petitioner lacked good moral character. Because we are presented with no genuine question of law, the Court lacks jurisdiction to review the BIA's discretionary determination that Petitioner lacked good moral character; we dismiss the petition.

I.

In 2006, Petitioner was issued a Notice to Appear, alleging that he is a nonimmigrant not in possession of a valid visa or other immigration document in violation of 8 U.S.C. section 1182(a)(7)(B)(i) of the Immigration and Nationality Act ("INA"). Petitioner appeared before an IJ. Petitioner conceded that he was a nonimmigrant and possessed no valid immigration document, but he asked the IJ to cancel the removal from this Country. Petitioner based his request on section 203 of

the Nicaraguan Adjustment and Central American Relief Act of 1997 ("NACARA"), Pub. L. No. 105–100, § 203, 111 Stat. 2160 (1997).

To establish his eligibility for this NACARA special-rule cancellation of removal, Petitioner bears the burden of showing that, among other things, he has been a person of good moral character during the required seven years of continuous physical presence in this Country.[1]  The "good moral character" requirement is at issue here.  The IJ decided that Petitioner lacked the required good moral character because Petitioner had been convicted twice for driving under the influence of alcohol, had been convicted twice for driving with a suspended driver's license, and had been arrested other times for driving under the influence of alcohol and for related offenses (including Petitioner's being arrested twice while his case was pending before the IJ).

Petitioner appealed to the BIA, which reviewed the IJ's decision de novo. After considering (specifically, but not only) that Petitioner owns a business, owns

---

[1]The special-rule cancellation of removal specified in section 203 of NACARA gives the Attorney General discretion under 8 U.S.C. section 1229b (section 240A of the INA) to cancel the removal of an alien who (1) is not inadmissible for having committed a crime of moral turpitude; (2) has been physically and continuously present in the United States for at least the seven years before applying for special-rule cancellation; (3) has been a person of good moral character during those seven years; and (4) establishes that removal would result in extreme hardship to the alien or to the alien's spouse, parent, or child, who is a citizen or legal permanent resident of the United States.

property, consistently pays taxes, regularly attends church, and supports his family in El Salvador, the BIA decided that Petitioner's criminal history outweighed the positive factors in the record. The BIA decided that, even if Petitioner had a psychiatric diagnosis of alcohol dependency, the diagnosis -- no evidence of which was on the record -- would not excuse Petitioner's repeated decisions to drive while intoxicated and would not excuse other convictions and arrests that involved no drinking. The BIA affirmed the IJ's decision denying Petitioner's application for cancellation of removal and affirmed the IJ's decision ordering Petitioner's removal. Petitioner petitions for review of the BIA's decision.[2]

## II.

We first must decide whether we have jurisdiction to consider Petitioner's appeal. See Vuksanovic v. U.S. Att'y Gen., 439 F.3d 1308, 1310 (11th Cir. 2006).

---

[2]Some of Petitioner's arguments now challenge the IJ's decision and not the BIA's decision. For BIA decisions that we have jurisdiction to review, we review the BIA decision and not the IJ decision. See Savoury v. U.S. Att'y Gen., 449 F.3d 1307, 1312 (11th Cir. 2006). If the BIA adopts the IJ's reasoning we review the IJ's reasoning. See id. The BIA in this case adopted no reasoning of the IJ, explaining that it decided Petitioner's case de novo: we consider the BIA's decision and not the IJ's decision.

This Court's jurisdiction to review the BIA's discretionary decisions is limited by statute. See 8 U.S.C. § 1252(a)(2)(B).

The INA prevents judicial review of the BIA's discretionary judgments that grant or deny petitions for cancellation of removal. Id. at § 1252(a)(2)(B)(i).[3] But, by passing the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, Congress clarified that the Court has jurisdiction to review all "constitutional claims or questions of law raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(D). We can review no discretionary determinations about cancellation of removal, except those discretionary determinations about which Petitioner presents a genuine constitutional claim or question of law. Here, Petitioner raises no actual questions of law or constitutional claims; he therefore fails to overcome the jurisdictional bar to our reviewing the BIA's discretionary decision about his moral character.

The INA explains "good moral character" in 8 U.S.C. section 1101(f). If a person applying for cancellation of removal has committed one of a series of listed offenses (the "per se categories"), the INA automatically precludes a finding that the

---

[3]Section 1252(a)(2)(B)(i) says that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1229b," which is the section giving the Attorney General authority to cancel removal of certain aliens who meet the statutory requirements. The BIA's decision denying Petitioner's application for cancellation of removal is a "judgment regarding the granting of relief under section" 1229b. So, we look at section 1252(a)(2)(B)(i) to decide whether we can consider this petition for review.

person has good moral character. 8 U.S.C. § 1101(f).[4] No "per se categories" are part of this case. Aside from the per se categories, the INA has a kind of "catchall provision," which says "that any person is not within any of the [per se categories] shall not preclude a finding that for other reasons such person is or was not of good moral character." Id. at § 1101(f). In this case the BIA decided, pursuant to the catchall provision of section 1101(f), that Petitioner lacks good moral character "for other reasons."

The way Congress worded the definition of good moral character in section 1101(f) shows that this BIA decision about Petitioner's character -- made pursuant to the catchall provision -- is discretionary.[5] A decision that a petitioner lacks good

---

[4]"No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was" a person who falls into one or more of the per se categories. Id. For the per se categories, the INA specifically disallows a finding of good moral character for "a habitual drunkard"; for a person "whose income is derived principally from illegal gambling activities" or "who has been convicted of two or more gambling offenses"; for a person "who has given false testimony" to get certain immigration benefits; for a person who has been convicted and imprisoned for an aggregate of six months or more; for a person who has been "convicted of an aggravated felony"; and for a person who has engaged in conduct related to "assistance in Nazi persecution, participation in genocide, or commission of acts of torture or extrajudicial killings," or who has engaged in conduct related "to severe violations of religious freedom." Id. at § 1101(f)(1)-(9).

[5]The other circuits that have examined the issue whether the catchall provision is discretionary have not come to a uniform result. The Eighth Circuit concluded that decisions under the catchall provision of section 1101(f) are non-discretionary and fully reviewable. See Ikenokwalu-White v. INS, 316 F.3d 798, 802-04 (8th Cir. 2003) (decisions whether a petitioner has good moral character under the catchall provision require applying the law to the facts and are non-discretionary, reviewable determinations). Other circuits have signalled other views on the nature of determinations under the catchall provision. See Bernal-Vallejo v. INS, 195 F.3d

6

moral character for being in one of the per se categories might be non-discretionary: after a BIA's finding that the petitioner falls within a per se category, the decision that a petitioner lacks good moral character seems to be mandated by statute and removed from the BIA's judgment.

But the INA sets the specific per se categories in contrast to the broader language of the immediately-following catchall provision. The language and structure of the statute indicate that the presence of the specific categories is not to preclude the BIA or the Attorney General from exercising their judgment -- a "by and large" kind of decision -- about a petitioner's lack of good moral character. A BIA decision pursuant to the catchall provision of section 1101(f) that a petitioner lacks good moral character is discretionary: for that section, whether a person lacks good moral character "for other reasons" is a matter of judgment not tightly controlled by formula or by hard rules. Congress entrusted the power to make this judgment on character to the Attorney General and not to the courts.

---

56, 62-63 (1st Cir. 1999) (decisions about moral character under the catchall provision are discretionary, but decisions about moral character based on the per se categories are non-discretionary); Kalaw v. INS, 133 F.3d 1147, 1151 (9th Cir. 1997) (same); Sumbundu v. Holder, 602 F.3d 47, 53-54 (2d Cir. 2010) (expressly leaving open the issue whether catchall moral character decisions are non-discretionary and fully reviewable because the question was not necessary in that case). Of these circuit decisions, only Sumbundu was decided after Congress passed the REAL ID Act of 2005. Id. at 54.

We have authority to review the BIA's discretionary decision only if the petitioner presents questions of law or constitutional claims about the decision. 8 U.S.C. § 1252(a)(2)(D). We have no jurisdiction to consider "garden-variety abuse of discretion" arguments about how the BIA weighed the facts in the record. Alvarez Acosta v. U.S. Att'y Gen., 524 F.3d 1191, 1196-97 (11th Cir. 2008); see also Argueta v. Holder, 617 F.3d 109, 112-13 (2d Cir. 2010) ("[C]laims lie beyond our jurisdiction because they are directed to the manner in which the IJ balanced the equities in denying [the petitioner's] application for discretionary relief . . . ."). For jurisdiction, we must look hard at Petitioner's actual arguments -- not just his description of his claims -- to determine whether we have jurisdiction to consider his petition for review.

Petitioner says that the IJ and the BIA violated binding precedent by failing to review the record as a whole; neither the IJ nor the BIA failed in this way, however. On the face of the BIA's decision, the BIA reviewed the record as a whole, listing and weighing facts that demonstrated its de novo review. And the IJ was presented with no evidence of the matter that Petitioner says the IJ should have specifically examined: Petitioner's purported alcohol dependency. Petitioner therefore presents no colorable question of law.

8

Petitioner also argues that the BIA failed to consider his unevidenced alcohol dependency as a factor in deciding that he lacked good moral character; but the BIA considered and expressly rejected the idea that Petitioner's alcohol dependency (if any) outweighed the material parts of Petitioner's criminal history. That the BIA decision on its face disproves Petitioner's supposed "questions of law" demonstrates that what Petitioner labels as legal arguments are, in fact and at most, quarrels with the BIA's exercise of discretion -- quarrels about weighing and balancing the imponderables that bear on a decision about "good character" and, therefore, quarrels into which we may not be drawn properly.

III.

The BIA decided -- pursuant to the catchall provision of section 1101(f) -- that Petitioner lacks good moral character and is therefore ineligible for special-rule cancellation of removal. Petitioner raises no genuine question of law or constitutional claim, so we have no jurisdiction to review that discretionary decision.

PETITION DISMISSED.

9

BARKETT, Circuit Judge, dissenting:

I dissent because Jimenez-Galicia's <u>eligibility to be considered</u> by the Attorney General for cancellation of removal is reviewable by this court, notwithstanding that the ultimate decision of the Attorney General whether to grant such relief is discretionary pursuant to 8 U.S.C. § 1229b, and cannot be reviewed. Jimenez-Galicia's eligibility to be considered for the exercise of that discretion is reviewable because the statutory requirement that he be a person of good moral character has not been specifically designated as being within the Attorney General's discretion.

Under 8 U.S.C. § 1252(a)(2)(B), entitled "Denials of discretionary relief," we are precluded from reviewing

> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or

> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

As addressed more fully below, the plain language of § 1252(a)(2)(B)(i) limits the preclusion of judicial review only to the "judgment," that is, the Attorney

10

General's ultimate discretionary decision granting or denying one of the five enumerated forms of relief. Section 1252(a)(2)(B)(ii) separately addresses "any other decision or action of the Attorney General . . . which is specified . . . to be in the discretion of the Attorney General." By structuring the judicial review provisions of § 1252(a)(2)(B) into two discrete clauses, Congress reflected the distinction between the ultimate discretionary authority of the Attorney General to grant a specific form of immigration relief—addressed by clause (i)—and the decisions regarding the underlying statutory prerequisites for eligibility for consideration for ultimate relief—addressed by clause (ii).

Moreover, the Supreme Court's recent decision in Kucana v. Holder, 130 S. Ct. 827 (2010), clarified that Congress, when enacting the judicial review provisions of § 1252(a)(2)(B), only intended to preclude review of those decisions where Congress has specifically granted the Attorney General discretionary authority in the statute. 130 S. Ct. at 836–37 ("Read harmoniously, both clauses [of 8 U.S.C. § 1252(a)(2)(B)] convey that Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute.").

Here, where Jimenez-Galicia is not challenging the Board of Immigration Appeals's, ("BIA"),[1] judgment regarding its ultimate exercise of discretion but instead one of its preliminary decisions regarding his statutory eligibility to be considered for the exercise of discretion, contrary to the majority's position, § 1252(a)(2)(B)(i) does not preclude our review. Nor are we precluded from judicial review pursuant to § 1252(a)(2)(B)(ii) because Congress has not specified that the good moral character prerequisite to eligibility for relief is within the Attorney General's discretion. I amplify these points below.

I.      <u>Under § 1252(a)(2)(B)(i) Congress Eliminated Judicial Review of Only the Attorney General's Ultimate Decision Regarding Certain Forms of Immigration Relief</u>

First, § 1252(a)(2)(B)(i) provides that a court may not review "any judgment regarding the granting of relief" under five distinct provisions of the INA. The majority takes the position that under § 1252(a)(2)(B)(i), courts are precluded from reviewing, not only the Attorney General's ultimate judgment, but also decisions regarding the <u>eligibility</u> requirements for any of the five forms of relief enumerated therein if a court deems those decisions "discretionary." This,

_____

[1] Although the actual decision-maker in Jimenez-Galicia's case was the BIA, I generally refer to the authority of Attorney General when discussing the statutory provisions at issue in this case. While Congress has vested in the Attorney General the authority to decide legal questions arising under the immigration laws, <u>see</u> 8 U.S.C. § 1103(a), the Attorney General has delegated this function to the BIA to carry out in individual cases, <u>see</u> 8 C.F.R. § 1003.1(a)(1).

however, misreads the plain language of § 1252(a)(2)(B)(i), which precludes judicial review of only "any judgment" regarding the granting of one of five forms of immigration relief.  Indeed, each of the listed statutes in § 1252(a)(2)(B)(i), in its own terms, expressly provides that it is the ultimate decision to grant the enumerated form of relief that is within the Attorney General's discretion.[2]  See Kucana, 130 S. Ct. at 836 (citing only to the discretionary language regarding the granting of the ultimate relief under 8 U.S.C. § 1182(h) in support of its acknowledgment that each of § 1252(a)(2)(B)(i)'s five enumerated statutes "contains language indicating that the decision is entrusted to the Attorney General's discretion").  Thus, in enacting clause (i) of § 1252(a)(2)(B), Congress intended to preclude our review only of that ultimate discretionary decision and not of any preliminary determinations regarding eligibility for consideration of that ultimate decision.

Precluding judicial review of only the ultimate decision of the Attorney General is consistent with the long-standing recognition of the distinction between

---

[2] See e.g., 8 U.S.C. § 1182(h) ("The Attorney General may, in his discretion, waive the application of subparagraphs . . . of this section."); 8 U.S.C. § 1182(i)(1) ("The Attorney General may, in the discretion of the Attorney General, waive the application of clause (i) of subsection (a)(6)(C) of this section."); 8 U.S.C. § 1229b(b)(1) ("The Attorney General may cancel removal of . . . ."); 8 U.S.C. § 1229c(a)(1) ("The Attorney General may permit an alien voluntarily to depart the United States."); 8 U.S.C. § 1255(a) ("The status of an alien . . . may be adjusted by the Attorney General, in his discretion, and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence.") (emphasis added in each parenthetical).

an individual's statutory eligibility for a particular form of discretionary immigration relief and the Attorney General's actual exercise of discretion. For example, in Jay v. Boyd, 351 U.S. 345, 353 (1956), the Supreme Court explained that "[e]ligibility for [suspension of deportation] is governed by specific statutory standards which provide a right to a ruling on an applicant's eligibility." The Court went on to distinguish the inquiry regarding statutory eligibility from the ultimate act of discretion. "However, Congress did not provide statutory standards for determining who, among qualified applicants for suspension, should receive the ultimate relief. That determination is left to the sound discretion of the Attorney General." Jay, 351 U.S. at 353.[3] See also Rodriguez v. Gonzalez, 451 F.3d 60, 62 (2d Cir. 2006) ("Obtaining . . . cancellation of removal is a two-step process. First, an alien must prove eligibility by showing that he meets the statutory eligibility requirements. Second, assuming an alien satisfies the statutory requirements, the Attorney General in his discretion decides whether to grant or deny relief.").

---

[3] The Supreme Court has also acknowledged this two-step decision-making process for immigrants in the context of obtaining habeas relief. See I.N.S. v. St. Cyr, 533 U.S. 289, 307–08 (2001) ("Eligibility that was governed by specific statutory standards provided a right to a ruling on an applicant's eligibility, even though the actual granting of relief was not a matter of right under any circumstances, but rather is in all cases a matter of grace.") (internal quotation marks omitted).

This two-step process is reflected in the structure of § 1252(a)(2)(B), which is divided between clause (i) which is limited to the Attorney General's ultimate discretionary "judgment" in granting or denying relief, and clause (ii) which addresses the decisions pertaining to the requirements for eligibility to be considered for relief. Accordingly, nothing in the statute's plain language or structure supports the conclusion that our review of the BIA's preliminary determination regarding Jimenez-Galicia's "good moral character" is precluded under clause (i) of § 1252(a)(2)(B). And as more fully amplified in the next section, the Supreme Court's decision in <u>Kucana</u> makes clear that under clause (ii), judicial review is precluded only when Congress has explicitly specified that a particular determination is left to the discretion of the Attorney General.

II.   <u>Congress Eliminated Judicial Review of Other Decisions Only When Designated by Congress to be Within the Attorney General's Discretion</u>

As § 1252(a)(2)(B)(i), by its own terms, does not preclude our review of Jimenez-Galicia's petition which does not challenge the BIA's ultimate exercise of discretion, we next consider whether § 1252(a)(2)(B)(ii) precludes judicial review of the BIA's determination that Jimenez-Galicia lacks "good moral character."

In Kucana, the Supreme Court specifically addressed the scope of the limitation on judicial review under § 1252(a)(2)(B)(ii) and held that "[r]ead harmoniously, both clauses [(i) and (ii)] bar court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute." 130 S. Ct. at 837. In reaching this holding, the Court observed that the statutory provision at issue "does not codify" nor "otherwise specify that [the relevant] decisions are in the discretion of the Attorney General." Id. at 834 (internal alteration and quotation marks omitted). In making this statement, the Court rejected the argument that the statutory language—"if the motion is granted"—sufficiently evinced Congress's specification of discretionary authority. Id. at 834 n.10. The Court explained that § 1252(a)(2)(B)(ii) "speaks of authority 'specified'—not merely assumed or contemplated—to be in the Attorney General's discretion." Id. The Court also considered that the plain and ordinary meaning of "'specify'" means "'to name or state explicitly or in detail.'" Id. (quoting Webster's New Collegiate Dictionary 1116 (1974)). The Court cited Soltane v. U.S. Dep't of Justice, 381 F.3d 143, 147 (3d Cir. 2004) (Alito, J.) for the proposition that "marginally ambiguous statutory language, without more, is [not] adequate to specify that a particular action is within the Attorney General's discretion for the purposes of § 1252(a)(2)(B)(ii)." Id. (internal quotation marks

16

omitted).  The Court therefore concluded that, in enacting § 1252(a)(2)(B)(ii),

Congress only intended to bar a court's review of decisions which Congress itself

specified as being discretionary in the statute.  See id. at 836–37.

Here, the decision that Jimenez-Galicia seeks to have reviewed is the BIA's

determination that he lacks "good moral character"—one of several statutory

criteria that must be established just to be eligible for the Attorney General's

ultimate exercise of discretion in granting cancellation of removal.  The

cancellation of removal statute provides in relevant part that,

> The Attorney General may cancel removal of, and adjust to the
> status of an alien lawfully admitted for permanent residence, an
> alien who is inadmissible or deportable from the United States if
> the alien . . . (B) has been a person of good moral character
> during such period[.]

8 U.S.C. § 1229b(b)(1) (2006).  The INA defines good moral character separately

at 8 U.S.C. § 1101(f).  In addition to listing several categories of persons who are

not of good moral character, the statutory definition provides that "[t]he fact that

any person is not within any of the foregoing classes shall not preclude a finding

that for other reasons such person is or was not of good moral character."  Id. §

1101(f).  It is under this clause that the BIA determined that Jimenez-Galicia was

not a person of good moral character.

Here, because Congress did not specify in the statutory provisions governing cancellation of removal nor in the statutory definition of "good moral character" that the determination of one's good moral character is within the Attorney General's discretion, § 1252(a)(2)(B)(ii) does not strip this court of its jurisdiction to consider Jimenez-Galicia's petition. There is simply no language that this statutory eligibility criterion has been "specified . . . to be in the discretion of the Attorney General." Id. § 1252(a)(2)(B)(ii).

The absence of Congress's grant of discretionary authority for the good moral character determination is all the more apparent when viewed in light of other provisions within the INA wherein Congress's grant of discretionary authority is explicit. For example, when enacting 8 U.S.C. § 1182(h), the statutory provision which governs waiver of certain grounds of inadmissibility, Congress specifically gave the Attorney General not only the discretion to grant or deny the ultimate relief, but also explicitly granted the Attorney General the discretion to determine most of the underlying statutory eligibility requirements. Specifically as to the ultimate relief, Congress wrote that "[t]he Attorney General may, in his discretion, waive the application of [certain grounds of inadmissibility]." Id. § 1182(h) (emphasis added). And regarding several of the underlying statutory eligibility criteria, Congress decreed that those requirements must be "established

to the satisfaction of the Attorney General." See id. § 1182(h)(1)(A)(i)–(iii) (emphasis added). See also id. § 1182(h)(1)(B) (leaving it to the "the satisfaction of the Attorney General" whether "the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien.") (emphasis added).

In contrast to these provisions, in the enactment of 8 U.S.C. § 1229b, the statutory provisions governing cancellation of removal, Congress specifically gave discretion to the Attorney General only regarding the ultimate decision whether to grant or deny such relief. See id. § 1229b(a) ("The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States."). Unlike the waiver of inadmissibility statute, none of the underlying eligibility requirements for cancellation of removal, including the special rules for battered spouses or persons eligible under NACARA, contain any language giving discretionary authority over those eligibility determinations to the Attorney General. Instead the statute merely lists the criteria for eligibility and/or provides that the individual must "establish," id. § 1229b(b)(1)(D), or "demonstrate," id. § 1229b(b)(2)(A), that he meets the criteria.[4]

---

[4] I am aware that our precedent in Gonzalez-Oropeza v. U.S. Att'y Gen., 321 F.3d 1331, 1332–33 holds that the "exceptional and extremely unusual hardship" eligibility requirement, § 1229b(b)(1)(D), for cancellation of removal is a discretionary decision not subject to review

19

If Congress had wanted the jurisdictional bar of § 1252(a)(2)(B) to extend to decisions that the courts, and not only Congress, deem "discretionary," Congress could easily have said so. See Kucana, 130 S. Ct. at 839 ("By defining the various jurisdictional bars by reference to other provisions in the INA itself, Congress ensured that it, and only it, would limit the federal courts' jurisdiction."). And if Congress had wanted to remove our jurisdiction to review any of the statutory eligibility criteria for cancellation of removal, it could have easily and explicitly specified which of those determinations are within the Attorney General's discretion as it did for the eligibility criteria for waivers of inadmissibility. It did not do either of those things. Instead, as the Supreme Court has instructed time and time again regarding immigration legislation, "where

---

under § 1252(a)(2)(B). In light of the plain language of § 1252(a)(2)(B)(i) and the Court's reasoning in Kucana, I believe our decision in Gonzalez-Oropeza is no longer supportable because there is nothing in the language of the cancellation of removal statute that indicates that Congress intended to leave the "exceptional and extremely unusual hardship" requirement to the Attorney General's discretion. Gonzalez-Oropeza simply adopted circuit precedent from Najjar v. Ashcroft, 257 F.3d 1262, 1297–98 (11th Cir. 2001), which held that a similar hardship requirement in the predecessor statute to cancellation of removal, known as suspension of deportation, was discretionary. We, however, failed to note in Gonzalez-Oropeza that the explicit language in the suspension of deportation statute provided that the determination about whether an individual would suffer a hardship was one left to the Attorney General's discretion. See Immigration and Naturalization Service v. Jong Ha Wang, 450 U.S. 139, 140 (1981) (citing the statutory eligibility requirements for suspension of deportation to include "a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship") (emphasis added). Nor did we address the obvious and material change that Congress made in the cancellation of removal statute when it no longer included language leaving the "exceptional and extremely unusual hardship" requirement to the discretion of the Attorney General.

Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." INS v. Cardoza–Fonseca, 480 U.S. 421, 432 (1987) (internal quotation marks and alteration omitted); see also Nken v. Holder, 556 U.S. 418, 430 (2009) (same); Kucana, 130 S. Ct. at 838 (same). Thus, where Congress has unequivocally demonstrated throughout various provisions of the INA that it knows how to designate that a particular decision is within the discretion of the Attorney General, and has also stated that those and only those discretionary decisions are not reviewable, courts must adhere to Congress's expressed intent. "Any lingering doubt about the proper interpretation of 8 U.S.C. § 1252(a)(2)(B)(ii) would be dispelled by a familiar principle of statutory construction: the presumption favoring judicial review of administrative action." Kucana, 130 S. Ct. at 839. See also Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 670 (1986) ("From the beginning [the Supreme Court's] cases have established that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress.") (internal quotation marks omitted).

Because, as <u>Kucana</u> teaches, Congress did not remove our jurisdiction to review the good moral character requirement for cancellation of removal, which it could have done by specifically making that eligibility requirement a discretionary decision, we are, and should be, required to review the BIA's decision that Jimenez-Galicia is not eligible for consideration for cancellation of removal.